## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KATHY LOY | : CIVIL ACTION NO. 3:17-cv-01428 |
| Plaintiff | : (Malachy E. Mannion) |
| v. | : |
| MAHANOY AREA SCHOOL DISTRICT and | : *ELECTRONICALLY FILED*: |
| DR. JOIE GREEN, Individually, | : JURY TRIAL DEMANDED |
| Defendants. | : |

### PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' 12(B)(6) MOTION TO DISMISS AND TO STRIKE

COMES NOW, the Plaintiff, Kathy Loy (hereinafter "Ms. Loy") and files this Brief in Opposition to Defendants' Motion to Dismiss.

### I. COUNTER STATEMENT OF FACTS

Plaintiff, Kathy Loy, holds a Master's Degree in Education and has been employed as a High School Teacher with the Defendant Mahanoy Area School District since 2004 and has been a basketball coach for 25 years. (Amended Compl. ¶¶19-20). Ms. Loy has had satisfactory or better performance evaluations throughout the last 14 years of her employment.

The only discipline Ms. Loy received during her 14-year employment was given to her after filing this federal lawsuit and taking FMLA leave. This suit alleges that Ms. Loy has been subjected to sexually harassing comments and actions because of her sex. For instance, in a district wide staff meeting, on or about February 6, 2017, Superintendent Green referred to the sexual orientation of Ms. Loy in a derogatory and offensive manner, in the workplace, to at least three District employees. (Am. Compl. ¶¶27-39) Superintendent Green complained about Ms. Loy, saying "I don't know how Tom [the High School Principal] works with her over there" and referred to Ms. Loy as a "frickin' lesbo." (Am. Compl. ¶35). Superintendent Green stated that Ms. Loy "should just go and lick another one. (Id.) Two days later, on February 8, 2017, a female student complained to the District about a YouTube video made and posted on February 7, 2017 by at least three Mahanoy Area School District students. (Am. Compl. ¶40-41). Despite the sexually hostile statements made by Superintendent Green against Ms. Loy, Superintendent Green began her investigation. On February 8, 2017 loaded the YouTube video on school property with two other employees present. The video was made by male students, who were in Ms. Loy's accounting class and given grades that were below average. (Am. Compl. ¶42-50). Those who watched the video from the Mahanoy Area School District were

aware that the students were being sexually hostile towards Ms. Loy. (Am. Compl. ¶50). Such sexually hostile and discriminatory statements include: "There's a bull dyke at our school…that gives us all bad grades"; "I thought these bull dykes were extinct"; "Shut the fuck up you bitch"; "Bitch dumbass dyke licking clit"; and "That's the dirty pussy smell you little cunt." (Am. Compl. ¶51). The students' speech is not protected; it is lewd, violent, intimidating, and was directed toward a particular teacher, Ms. Loy, because of her sex. (Am. Compl. ¶52-57). The District does not block YouTube from access at School. Thus, it was reasonably foreseeable that the video would reach school property and did in fact reach school property and came to the attention of school administrators, including Defendant Green. The video did cause substantial disruption to the school. (Am. Compl. ¶¶64-67). Ms. Loy learned of the video until February 12, 2017. She was offended and frightened. Ms. Loy was instructed by her union to file a complaint with the U.S. EEOC, which she did on February 16, 2017. The Mahanoy Area School District failed to timely respond and otherwise failed to take any effective action to stop the harassment or correct it. The District failed to take action against the students or to discipline them. The video is still posted. (Am. Compl. ¶82-109).

In the meantime, the District only directed Superintendent Green to

undergo training in connection with the sexually offensive language she directed at Ms. Loy. (Am. Compl. ¶102). Ms. Loy, on the other hand, suffered health problems as a result of the Defendants' actions and being so badly frightened by the students' statements made about her. (See e.g., Am. Compl. ¶116). Ms. Loy had to take a medical leave and submitted a FMLA request that was completed by her treating medical provider to the District, including for fatigue and anxiety. (Am. Compl. ¶120). The District and Defendant Green were aware of Ms. Loy's assertion of rights under the FMLA, her need for medical leave, and the details of her serious health condition. (Am. Compl. ¶121). Upon her return to work from her FMLA leave, Ms. Loy was given discipline as directed by Defendant Green. This was the first discipline ever given to Ms. Loy during her nearly 14-year tenure with the District. (Am. Compl. ¶¶131-136).

On November 13, 2017, Ms. Loy filed her Amended Complaint (Doc. 10). Ms. Loy's Amended Complaint seeks relief and damages against the Defendants, including for equitable relief, resulting from the discrimination and retaliation she has been made to endure under the Section 1983 of the Civil Rights Act (Count I), the Family and Medical Leave Act (Count II), Title VII of the Civil Rights Act (Count III), and the Pennsylvania Human Relations Act (Count IV). Defendants then filed their second Motion to

Dismiss and to Strike, along with a Memorandum in Support (Docs. 13-14).

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a district court must accept all facts alleged in the complaint as true and construe the complaint in the light most favorable to the nonmoving party. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). Facts alleged in the complaint and its attachments (e.g., exhibits) are only considered in deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6). See Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994). Defendants bear the burden of establishing that the plaintiff's complaint fails to state a claim upon which relief can be granted. Gould Elecs. v. United States, 220 F.3d 169, 178 (3d Cir. 2000). Applying this standard of review to Ms. Loy's complaint, this Court must deny Defendants' 12(b)(6) Motion to Dismiss. Further, a court must grant leave to amend before dismissing a complaint that is merely deficient.

## LEGAL ARGUMENT

**A. MS. LOY'S COMPLAINT MAY NOT BE DISMISSED BECAUSE THE COLLECTIVE BARGAINING AGREEMENT**

**DOES NOT CLEARLY AND UNMISTAKABLY REQUIRE BINDING ARBITRATION.**

The Collective Bargaining Agreement ("CBA") referenced by the Defendants should not be considered in deciding their motion to dismiss. First, the CBA is not attached to the Amended Complaint. Second, the dates on the CBA show that it is expired and lasts until the 2015-2016 school year; Ms. Loy's allegations occur during the 2016-2017 and 2017-2018 school years. Thus, there is a dispute about the validity of the CBA.

Even if this Court considers the CBA and emails attached by Defendants as exhibits, this CBA is not one that mandates arbitration. Where a CBA "clearly and unmistakably" compels a union member to arbitrate an Age Discrimination in Employment Act claim, the Supreme Court has held the provision enforceable. See e.g., 14 Penn Plaza LLC v. Pyett, 566 U.S. 247 (2009). However, Mahanoy Area's CBA does not "clearly and unmistakably" compel union members to arbitrate their claims. (Am. Compl. ¶¶77-85). Additionally, to bolster the defendants' claim, they attach emails; however, these emails show that Ms. Loy was not involved and neither she nor undersigned counsel were involved.

Additionally, the provision of the CBA that allegedly clearly and unmistakably forces the teachers to arbitrate their federal and state claims cited by Defendants is Section 2.01. Section 2.01 of the CBA does not

specifically reference Title VII, the PHRA, the ADEA, the ADA, the FMLA, Section 1983 or any other specific employment law. Rather, a plain reading of Section 2.01 is meant to acknowledge the union members' rights to unionize. It essentially says that the School District acknowledges that the teachers have the right to collectively bargain, the District will not coerce or deprive any teacher of their rights under the law, that the District will not discriminate against a member because of his or her membership or participation in the union. Because the CBA does not clearly and unmistakably instruct the union members, including Ms. Loy, that they are compelled to arbitrate their employment law claims, the Defendants' motion to dismiss Ms. Loy's federal and state claims must be denied.

**B.     MS. LOY SUFFICIENTLY ALLEGES A HOSTILE WORK ENVIRONMENT BECAUSE OF HER SEX.**

For a hostile work environment claim, a plaintiff must show that "1) the employee suffered intentional discrimination because of his/her [sex], 2) the discrimination was severe or pervasive, 3) the discrimination detrimentally affected the plaintiff, 4) the discrimination would detrimentally affect a reasonable person in like circumstances, and 5) the existence of *respondeat superior* liability [meaning the employer is responsible]."

Here, Ms. Loy has sufficiently alleged a workplace permeated with discriminatory insult directed at Ms. Loy because of her sex to meet the

7

definition of "pervasive."  See e.g., Am. Compl. *passim*.  She has also alleged that the conduct was sufficiently "severe" as to alter the conditions of her work environment, including calling her a "frickin' lesbo" and saying that "she should go lick another one" and causing a threatening video to be circulated in the school.  Id.  Such discriminatory statements were made in the workplace because of Ms. Loy's sex.  Both the Western and Eastern Districts of Pennsylvania have recently held that Title VII includes a prohibition of discrimination based on sexual orientation.  United States EEOC v. Scott Med. Health Ctr., P.C., 217 F. Supp. 3d 834, 841-42 (W.D. Pa. 2016) and Ellingsworth v. Hartford Fire Ins. Co., 247 F. Supp. 3d 546 (E.D. Pa. 2017).

The Third Circuit has held that even *a single* racial slur may be sufficient to assert a hostile work environment claim under Section 1981 of the Civil Rights Act, reasoning that the correct legal standard is "severe or pervasive", reasoning that "[t]he correct standard is "severe *or* pervasive." Castleberry v. STI Group, 863 F.3d 259  (3d Cir. 2017). Section 1981 hostile environment claims are subject to the same analysis as discrimination claims under Title VII and, therefore, employees bringing hostile environment claims under Title VII may also prevail by alleging either severe or pervasive

conduct.[1] Calling a gay female teacher a "frickin' lesbo" and that "she should go lick another one" interfered with Ms. Loy's work and resulted in her becoming physically ill and missing time from work. (Amended Compl. *passim*) are certainly sufficient allegations to show that Ms. Loy was subjected to a hostile work environment because of her sex.

### C.  MS. LOY ENGAGED IN PROTECTED, FIRST AMENDMENT SPEECH AND SUFFERED DAMAGES; THEREFORE, COUNT I MAY NOT BE DISMISSED.

To state a claim under §1983, a plaintiff must meet two threshold requirements. She must allege: 1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, she was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States. West v. Atkins, 487 U.S. 42, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988); Parratt v. Taylor, 451 U.S. 527, 535, 101 S. Ct. 1908, 68 L. Ed. 2d 420 (1981), *overruled in part on other grounds*. Ms. Loy's speech, as a public employee, is protected by the First Amendment when: "(1) in making it, the employee spoke as a citizen, (2) the

---

[1] Other Courts of Appeal have found isolated acts of discrimination can create a hostile work environment. Castleberry, 863 F.3d at 265 citing Boyer-Liberto v. Fontainbleau Corp., 786 F.3d 264, 268 (4th Cir. 2015); Adams v. Austal, U.S.A., LLC, 754 F.3d 1240, 1254 (11th Cir. 2014); Ayissi-Etoh v. Fannie Mae, 712 F.3d 572, 577 (D.C. Cir. 2013) (use of "n" word); Rodgers v. Western-Southern Life Ins. Co., 12 F.3d 668, 675 (7th Cir. 1993) (use of "n" word).

9

statement involved a matter of public concern, and (3) the government employer did not have 'an adequate justification for treating the employee differently from any other member of the general public' as a result of the statement he made." Hill v. Borough of Kutztown, 455 F.3d 225, 241-42 (3d Cir. 2006) (quoting Garcetti v. Ceballos, 547 U.S. 410, 418 (2006)).

Ms. Loy exercised her First Amendment rights by complaining of on-going sex discrimination, hostile work environments, and by engaging in protected union activity by filing grievances. To be protected speech, the speech must be a matter of public concern. Connick v. Myers, 461 U.S. 138 (1983). Speech involves matters of public concern "when it can `be fairly considered as relating to any matter of political, social, or other concern to the community,' or when it `is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public.'" Snyder v. Phelps, 131 S.Ct. 1207, 1216 (2011). A sexual harassment complaint can be protected speech. Azzaro v. County of Allegheny, 110 F.3d 968, 975 (3d Cir. 1997) (en banc).

Furthermore, Ms. Loy's speech was not ordinarily made as her job responsibilities as a government employee. Garcetti v. Ceballos, 126 S. Ct. 1951, 1960 (2006)("when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First

Amendment purposes, and the Constitution does not insulate their communications from employer discipline."). It is not the ordinary job duty of a public school teacher to have to file an EEOC discrimination complaint, to report suspected criminal activity of students and administrators to the District Attorney, or be interviewed by the District Solicitor for an investigation into the misconduct of students and administrators. See e.g., Am. Compl. ¶¶ 83-86, 91, 97, 98; Gula v. Noonan, No. 3:14-2210, 2017 U.S. Dist. LEXIS 202637, at *27 (M.D. Pa. Dec. 8, 2017) (speech regarding sexual harassment and misconduct, domestic violence "can be said to have sought "to advance a political or social point of view beyond the employment context…").

Ms. Loy's speech was a motivating factor for the Defendants' decisions taken against her; including Defendants' decision to damage her reputation, place her in an unsafe environment, to give her discipline, to fail to discipline the students and allow them to intimidate and threaten a teacher, and to interfere with her ability to coach basketball. *Mt. Healthy City Board of Education v. Doyle*, 429 U.S. 274, 287, (1977). Decision-makers, including Defendant Greene, were aware of Ms. Loy's protected conduct. *Ambrose v. Township of Robinson, Pa.*, 303 F.3d 488, 493 (3d Cir. 2002). A "motivating factor" does not mean a sole factor, and timing can be used as well as antagonism directed

toward the plaintiff or a change in demeanor toward plaintiff after speech can be used to show motivating factor. Thus, Ms. Loy has sufficiently alleged a claim under Section 1983 of the Civil Rights Act against Defendant Green.

### D. MS. LOY HAS SUFFICIENTLY ALLEGED FMLA RETALIATION AND DAMAGES.

Ms. Loy has alleged sufficient facts to support her Family and Medical Leave Act retaliation claim; she has already shown that, having exercised rights protected under the FMLA, "[s]he suffered an adverse employment decision, and . . . the adverse decision was causally related to [her] leave." Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 146 (3d Cir. 2004); see Erdman v. Nationwide Ins. Co., 582 F.3d 500, 509 (3d Cir. 2009); Hayduk v. Johnstown, 2010 WL 2650248 (3d Cir. July 2, 2010). To demonstrate the existence of an adverse employment decision, the Supreme Court has held, in the Title VII context, that "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse," such that the action well might have dissuaded a reasonable worker from taking a protected action. Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006).

Ms. Loy has alleged causation in her Amended Complaint. She alleges that upon her return to work during the 2017-2018 school year, Defendant Green disparaged Ms. Loy to the new principal, instructing him

to "keep an eye" on her. (Am. Compl. ¶117-119). Ms. Loy had to take an FMLA leave for fatigue and anxiety, of which Green was aware. (Am. Compl. ¶¶119-120). Green sent letters to Loy on October 4 and 31, 2017 acknowledging her FMLA leave. (Am. Compl. ¶122). Ms. Loy may not be able to coach basketball, lost her accrued time off from work, and incurred medical expenses. (Am. Compl. ¶¶123-129). Upon her return from FMLA leave, Defendant Green directed discipline be given to Ms. Loy, which is the first discipline in her 14-year career. (Am. Compl. ¶¶129-137). A reasonable inference can be made that this discipline was given within a month of Ms. Loy's protected activity, establishing temporal proximity.

In the Ninth Circuit held that the FMLA would allow an employee to recover lost wages for absences from work that were caused by stress and anxiety resulting from his employer's wrongful denial of FMLA leave. <u>Farrell v. Tri-County Metro. Trans</u>, 530 F3d 1023, 1025 (9th Cir. 2008), The Amended Complaint alleges Ms. Loy had unpaid absences from work that were caused by stress and anxiety resulting from the employer's violations of the FMLA. A reasonable inference can be made that the anxiety and fatigue were caused by the Defendants' actions and that Ms. Loy has sustained lost wages/benefits.

Additionally, a plaintiff can recover, in the alternative to lost compensation, "any actual monetary loss sustained by the employee as a direct result of the violation, such as the cost of providing care. . ." 29 U.S.C. § 2617(a)(1)(A)(i)(II).  In <u>Fath v. Heritage Valley Medical Group</u>, 2013 U.S. Dist. LEXIS 13694, *11 (W.D. Pa. Feb. 1, 2013), the court held that damages for the loss of plaintiff's husband's overtime wages when he had to transport plaintiff's mother, travel expenses incurred from traveling from work to medical appointments, and the loss of rent money were sufficient facts from which it could be inferred that damages were actual monetary losses that plaintiff suffered as a direct result of her employer's interference with her FMLA rights. <u>See</u> <u>also</u> <u>Ragsdale v. Wolverine World Wide, Inc.</u>, 535 U.S. 81, 87 (2002) (Under the FMLA, "violators are subject to consequential damages and appropriate equitable relief, §2617(a)(1)"). Therefore, Ms. Loy has alleged causation and monetary losses because of the Defendants' FMLA retaliation; as such, Defendants' motion to dismiss her FMLA claim must be denied.

**E.    THERE ARE NO IMMATERIAL, IMPERTINENT OR SCANDALOUS ALLEGATIONS TO BE STRICKEN.**

Defendants' attempt to strike allegations concerning the YouTube video must fail. As the Amended Complaint alleges, Defendant Superintendent Green played the threatening video during school hours,

using school equipment, and in front of school employees. This caused an actual disruption to the school, including Green disseminating the video, failing to discipline the students who admitted that the video was about Ms. Loy, and caused Ms. Loy to be frightened and suffer a physical injury. Thus, all allegations are relevant, especially to the conduct of the Superintendent, and must not be stricken.

**F.     MS. LOY'S CLAIMS FOR RELIEF ARE VALID AND MAY NOT BE STRICKEN.**

Punitive damages are available against Defendant Greene, who is being sued in her individual capacity. Therefore, the claim for punitive damages as applied to her or any other non-municipal entity may not be dismissed. Ms. Loy does allege a job loss, including the loss of her basketball coaching job and days missed from work. Therefore, these claims for relief may not be dismissed.

**CONCLUSION**

Based on the foregoing, Plaintiff, Kathy Loy, respectfully requests this Court deny the Defendants' Motion to Dismiss and to Strike.

                      Respectfully submitted,

                      _____/s/ Lisa Matukaitis__
                      Lisa Matukaitis, Esq.
                      PA BAR ID # 202467
                      MATUKAITIS LAW LLC
                      2201 N. Front Street, Suite 203

                                                            Harrisburg, PA 17110
                                                               (717) 412-7759
                                                              lm@matlawllc.com

Dated: December 18, 2017

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on the 18th day of December 2017, a true and correct copy of the Plaintiff's Brief in Opposition to Defendants' Motion to Dismiss and to Strike was served electronically on counsel for Defendants via ECF.

*Attorneys for Defendants*

Michael I. Levin, Esq.
James J. Musial, Esq.
1301 Masons Mill Business Park
1800 Byberry Road
Huntingdon Valley, PA 19006


                                           *s/Lisa Matukaitis*
                                           Lisa Matukaitis