**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| KATHY LOY,<br>          Plaintiff<br><br>v.<br><br>MAHANOY AREA SCHOOL DISTRICT,<br>and<br>DR. JOIE GREEN,<br>          Defendants. | Civil Action No. 3:17-cv-01428<br><br>(Malachy E. Mannion) |

**DEFENDANTS' REPLY BRIEF TO PLAINTIFF'S BRIEF**
**IN OPPOSITION TO MOTION TO DISMISS AND TO STRIKE**

Defendants, Mahanoy Area School District ("School District") and Dr. Joie Green ("Dr. Green"), file this Reply Brief to "Plaintiff's Brief in Opposition to Defendants' 12(B)(6) Motion to Dismiss and to Strike," as follows.

As to Plaintiff's "Counterstatement of Facts," this Court in ruling on the Rule 12(b)(6) Motion must accept as true only the well-pleaded factual allegations set forth in the Amended Complaint, not any suggested "Facts" or legal conclusions. Plaintiff's Counterstatement improperly includes both, and should be disregarded. Defendants' Statement of Facts are limited to the Amended Complaint.  (Defs.' Mem. of Law, §1).

1. **Plaintiff Contends that Her Collective Bargaining Agreement (CBA) Does Not Clearly and Unmistakably Compel Arbitration of Her Statutory Claims.**

Plaintiff argues that: "Because the CBA does not clearly and unmistakably instruct the union members, including Ms. Loy, *that they are compelled* to arbitrate their employment law

claims, the Defendants' motion to dismiss Ms. Loy's federal and state claims must be denied." (Pl.'s Brf., §A, p.7) (italics added).[1] This argument is misdirected. Defendants' Motion evidences that Plaintiff elected to pursue binding arbitration under the terms of her CBA, and to include reliance upon "all statutes, rules, regulations and the like controlling such matters in the Commonwealth of Pennsylvania and the United State of America." (Defs.' Mem. of Law, §IV(1) and Exh. "B"). Plaintiff narrowly interprets CBA §2.01, ignoring its language that the School District shall not "deprive … any teacher in the employment of any rights conferred by the Agreement or the laws [or][2] the Constitutions of the Commonwealth of Pennsylvania and the United States, [and] that it *shall not discriminate against any teacher* by reason of his membership in the Association … *or otherwise* with *respect* to any *terms or conditions of employment* of professional practice*"* (italics added). (Defs.' Mem. of Law, CBA at Exh. "B"). Plaintiff's grievance arbitration, brought pursuant to the terms of her CBA, does encompass state and federal statutory and Constitutional claims as are asserted in her Amended Complaint. It should be noted too that while Plaintiff suggests that "there is a dispute about the validity of the CBA" attached to Defendants' Memorandum (Pl.'s Brf., §A, p.6), she does

---

[1] The same is stated on page 6 of Plaintiff's Brief, that "[the] CBA does not 'clearly and unmistakably' *compel* union members to arbitrate their claims" (italics added). Plaintiff's cited case, *14 Penn Plaza LLC v. Pyett*, 566 U.S. 247 (2009), does not hold that a CBA must *compel* such arbitration. Rather, it held that the terms of the CBA in that case clearly and unmistakably required arbitration of ADEA claims by union members. Plaintiff in this case elected to pursue arbitration under the terms of her CBA.

[2] The CBA includes the word "of" rather than "or," of which the latter word obviously was intended to encompass rights under Pennsylvania and federal laws *and* the Pennsylvania and U.S. Constitutions.

not assert that her references to the CBA in the Amended Complaint and Grievance Report Form (GRF) are to any possible subsequent CBA between the parties. While she references and relies upon the CBA in her Amended Complaint, she did not attach a copy. (*See,* Amended Compl., ¶¶76-80). As a member of the union who has filed a grievance under the CBA, Plaintiff would know if the parties were continuing to operate under the terms of the CBA attached to Defendants' Memorandum. While suggesting a possible "dispute" about the continuing validity of the CBA, there is no reference to any different CBA to which her GRF refers.[3] Her GRF also relies upon all Pennsylvania and federal "statutes, rules, regulations and the like controlling such matters…." (Defs.' Mem. of Law, GRF §B(1), at Exh. "B").

### 2. Plaintiff Contends That She Sufficiently States Hostile Work Environment Claims in Counts III and IV Based Upon a Single Alleged Incidence.

Plaintiff asserts that she has pled sufficient facts to demonstrate "a workplace permeated with discriminatory insult," to meet the definition of "pervasive." She contends that she has alleged conduct sufficiently "severe" as to "alter the conditions of her work environment…." (Pl.'s Brf., §B, pp.7-8). Plaintiff's claimed factual bases to support her claims of "severe or pervasive" discrimination are: (1) the alleged single utterance of Dr. Green referring to her as a "frickin' lesbo … [and] she should go lick another one," and (2) "causing a threatening video to be circulated in school." *Id.* As for the latter, there are no well-pled facts in the Amended Complaint that Dr. Green or the School District caused such video to be

---

[3] Plaintiff's assertion unfortunately suggests that defense counsel would misrepresent and refer this Court to a CBA whose terms the parties are not continuing to operate under.

circulated in school. To the contrary, the Amended Complaint alleges that a group of Plaintiff's students made a YouTube video filled with lewd, discriminatory dialogue about their lesbian teacher who had given them bad grades. (*See*, Amended Compl., ¶¶39, 42-44, 52). The students made the video away from school grounds. (*Id*., ¶¶65, 92). The Amended Complaint avers that Dr. Green was investigating the incidence of the video after learning of its existence.  She did not cause it to be "circulated in school." (*Id*., ¶¶40-41). Plaintiff's additional suggestion, that Dr. Green's appropriate act of investigating the students' video in her capacity as School District Superintendent satisfies Loy's further burden to show "intentional discrimination because of … her [sex],'" is a *non-sequitur* and untenable.  (Pl.'s Brf., §B, p.7)

Even assuming as true for purposes of the Motion that Dr. Green made the alleged utterance about Plaintiff's sexual orientation, that is patently distinguishable from the facts at issue in *Castleberry v. STI Group*, 863 F.3d 259 (3dCir. 2017), cited by Plaintiff. In that case, the Court noted that a supervisor's use of the "[n-word] *in front of Plaintiffs and their non-African-American co-workers* was *accompanied by threats of termination* (which ultimately occurred)." *Id.* at 265 (italics added). It determined that this particular scenario constituted "severe" conduct that could create a hostile work environment. *Id.* The Court determined that the Plaintiffs also could satisfy the "pervasive" alternative due to their accompanying allegations that "'on several occasions' their sign-in sheets bore racially discriminatory comments and that they were required to do menial tasks while their white colleagues (who were less experienced) were instructed to perform more complex work." *Id.*, at 265-266. The

one-time comment allegedly made by Dr. Green, outside the presence of Plaintiff, could hardly be deemed to constitute "severe or pervasive" discrimination and a hostile work environment. Moreover, the Amended Complaint is devoid of facts as to any specific ways that the terms and conditions of Plaintiff's employment were changed by the alleged comment. As the Supreme Court has held: "We have made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment, and the Courts of Appeals have heeded this view." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

### 3. Plaintiff Contends She Sufficiently States a Section 1983 Retaliation Claim in Count I Based Upon Exercise of Her First Amendment Right of Free Speech.[4]

Plaintiff asserts that she exercised her First Amendment rights "by complaining of ongoing sex discrimination, hostile work environments, and by engaging in protected union activity by filing grievances." (Pl.'s Brf., §C, p.10). Her Amended Complaint includes facts that she filed a union grievance pursuant to her CBA and a complaint with the EEOC. There are no facts of any other "complaining," "hostile work environments" (plural) or "filing grievances (plural)." She subsequently filed this action. Count I purports to state a claim for retaliation for her exercise of First Amendment activity. While she cites certain cases to argue that her employment-related claims are a matter of "public concern," these cases are easily distinguishable. By Plaintiff's logic, any claim of sex discrimination against an employer is a

---

[4] Plaintiff's Brief makes no mention of the First Amendment rights to petition for redress of grievances or free expressive association, or the Fourteenth Amendment right to due process, each of which are fleetingly referenced within Count I of her Amended Complaint. Defendants need not Reply to such references beyond what is set forth in their Memorandum of Law.

matter of public concern for purposes of application of the First Amendment. The law is otherwise, as cited in Defendants' Memorandum of Law. Plaintiff cites *Azzaro v. County of Allegheny*, 110 F.3d 968 (3dCir. 1997) for her general statement that a sexual harassment complaint *can be* protected speech. (Pl.'s Brf., §C, p.10). *Azzaro* involved a claim that the plaintiff had been discharged in retaliation for reporting an incident of sexual harassment by an executive assistant *to the County Commissioner*. *Id.*, at 970, 978. The plaintiff claimed that the Commissioner's executive assistant began to undress her in the Commissioner's office, saying "let me see," and unzipped his pants. When she protested loudly, he made her promise to keep this incident secret. She did so for a time out of fear of losing her job, and eventually reported it to a supervisor. *Id.* at 970. Subsequently, her job and that of the supervisor were eliminated purportedly "due to budgetary reasons," although at the same time it was proposed to hire nine new employees and raise the salaries of eight others. *Id.* at 972-973. The Court reviewed whether her sexual harassment reports were protected by the First Amendment, under the dictates of *Connick. v. Myers*, 461 U.S. 138 (1983). *Id.*, at 975. It cited *Connick* that: "[I]f the content and circumstances of a private communication are such that the message conveyed would be *relevant to the process of self-governance* if disseminated to the community, that communication is public concern speech even though it occurred in a private context." *Id.*, at 978 (italics added). Indeed, several times in its opinion the court repeated the relevance of this "self governance" issue as critical for deciding when speech by a public employee may be a matter of public concern rather than a private matter:

Given that the basis for the special protection accorded public concern speech is its instrumental value to the community in enabling *self-governance*, a court asked whether a public employee's speech relates to a matter of public concern must determine whether expression of the kind at issue is of value to the process of *self-governance*. This task does not, of course, involve the court's passing judgment on the merit of the view expressed or its source. Rather, the issue is whether it is important to the process of *self-governance* that communications on this topic, in this form and in this context, take place. *Id.*, at 977 (italics added).

Reviewing the facts under the rubric of *Connick* and similar Supreme Court precedent, the court determined that "there is a substantial public interest in Azzaro's revelations because they were relevant to an *evaluation of the performance of the office of an elected official*." *Id.*, at 977 (italics added). It cited, as examples of such public concern, where the communication indicated "that the District Attorney's office was not discharging its governmental responsibilities in the investigation and prosecution of criminal cases, or brought to light actual or potential wrongdoing or breach of public trust on the part of the [District Attorney] that would be relevant in evaluating the *performance of a public office or official*." *Id.* (citing *Connick, supra,* at 148) (italics added). The Court also cited the example of *Swingford v. Snyder County, PA*., 15 F.3d 1258, 1271 (3dCir. 1994): "[A]llegation of *malfeasance by election officials* is speech 'fall[ing] squarely within the core public speech delineated in *Connick*.'" *Id.* (italics added). The *Swingford* Court cites a host of Supreme Court and Third Circuit cases providing examples of public employee speech that were deemed to be of public concern rather than matters of personal grievance. *Swingford*, at 1271. It noted that: "These cases indicate speech disclosing public officials' misfeasance is protected while speech intended to air personal grievances is not." *Id.*

7

Plaintiff cites *Garcetti v. Ceballos*, 547 U.S. 410 (2006) for its holding that public employees do not speak as citizens for First Amendment purposes when they make statements pursuant to their official job duties. (Pl.'s Brf., §C, pp.10-11). She then leaps to suggest that public employees always speak as citizens, and thus raise issues of public concern, for First Amendment purposes as long as their statements are not made pursuant to their job duties. (*Id*., at p11). This is not the holding in *Garcetti*, and flies in the face of numerous Supreme Court and Third Circuit precedents, which do not determine the issue based on such a single, simple inquiry. Plaintiff conflates the issues of whether a public employee speaks as a citizen for First Amendment purposes, with whether the employee speaks as a public citizen *on a matter of public concern*. Both elements are separately required to potentially state such a Section 1983 claim, and Plaintiff has not stated a matter of public concern as the relevant precedents have defined. *And see*, *Gula v. Noonan*, No. 3:14-2210 (M.D.Pa. 2017) (Mannion) cited by Plaintiff, where this Court cited precedent:

> A public employee's speech is only protected when '(1) in making it, the employee *spoke as a citizen*, (2) the statement involved *a matter of public concern*, *and* (3) the government employer did not have an adequate justification for treating the employee differently from any other member of the general public as a result of the statement he [or she] made.' *Flora* [*v. County of Luzerne*, 776 F.3d 169, 175 (3dCir. 2016] (quoting *Garcetti*, 547 U.S. at 418).

*Id*., (3:14-2210, Mem., §IV(A), "Discussion," p.23) (italics added) (copy attached as Exhibit "A," per L.R. 7.8).

The facts of the present case are significantly distinguishable from those at issue in *Gula*. Gula was employed as a trooper with the Pennsylvania State Police (PSP). She filed a

8

complaint with the PSP that she was being sexually harassed by another trooper, Brackett, resulting in an Internal Affairs Division (IAD) investigation. Misconduct charges were issued against Trooper Brackett.  Gula also provided statements and was listed as a witness in other IAD investigations involving allegations of sex discrimination at the Trevose Barracks. Subsequently, Gula reported to PSP that she had been assaulted while in uniform by her boyfriend. When PSP investigators determined that the domestic violence allegations were "unfounded," her commander initiated an investigation of Gula for the crime of making false reports. This led to the filing of criminal charges against her, suspension without pay, her arrest and eventual criminal trial. Gula was found not guilty of all charges. Nevertheless, a continuing PSP investigation culminated in administrative charges against her for "false statements," and she was notified that she was to be dismissed. She was approved to be court martialed. However, Gula also prevailed in her grievance arbitration, was fully reinstated and awarded full back pay. *Id.* (3:14-2210, Mem., § II "Material Facts," pp.4-10). In this context, including the recognition that Gula had also made other complaints about sexual harassment and misconduct in the workplace, the Court determined that her speech did not relate solely to a mundane employment grievance; rather, it implicated a matter of governmental inefficiency and misconduct [as] a matter of considerable significance."  *Id.*, (3:14-2210, Mem., § IV(A), "Discussion," pp.25-26).

Plaintiff's allegation that Dr. Green on one occasion made a derogatory comment about her sexual orientation hardly equates to the facts in *Garcetti* (involving the office of an

elected official) or *Gula* (involving governmental inefficiency and misconduct) that were deemed to be matters of public concern rather than private workplace grievances.

Plaintiff next asserts a bare legal conclusion that her speech "was a *motivating factor* for the Defendants' decisions taken against her, including Defendants' decision to damage her reputation, place her in an unsafe environment, to give her discipline, to fail to discipline the students and allow them to intimidate and threaten a teacher, and to interfere with her ability to coach basketball" (italics added).[5] (Pl.'s Brf., §C, p.11). None of this is relevant to deciding the instant Motion, which relies only upon the well-pled facts of the Amended Complaint. Plaintiff cites *Mt. Healthy School Dist. Bd. of Ed. v. Doyle*, 429 U.S. 274, 287 (1977) and *Ambrose v. Twp. of Robinson*, 303 F.3d 488, 493 (3d.Cir. 2002), which stand for the proposition that a plaintiff ultimately bears the burden to prove that her speech, *if found to be protected as First Amendment speech*, was a "motivating factor" in an adverse employment action against the plaintiff. *Doyle* at 298, n.2; *Ambrose* at 493. Even then, the burden shifts to the defendant employer to show that it would have taken the same action in the absence of such protected conduct. *Id.* None of these burdens are relevant to the instant Motion to Dismiss and to Strike Certain Averments. The present issue raised by Defendants' Motion is that Plaintiff's "speech" under the facts of this case does not constitute a matter of "public concern" that might be protected as First Amendment speech. It is only if all the

---

[5] Plaintiff's allegations about Defendants (plural) are inappropriate in any case, as Count I is asserted against only Dr. Green.

elements of a First Amendment claim are satisfied that a plaintiff next must meet her burden to demonstrate that such protected speech was a motivating factor in an employer's adverse employment action. *Ambrose, supra* at 493 (citing *Bd. of County Comm'rs v. Umbehr*, 518 U.S. 668, 675 (1996). Plaintiff's "motivating factor" discussion is irrelevant.

### 4. Plaintiff Contends that She Sufficiently States a Claim in Count II for FMLA Retaliation and Damages.

In Count II of her Amended Complaint, Plaintiff claims that after she returned from FMLA leave, "the Defendants took negative actions against her, including issuing a [sic] undeserved and incorrect discipline in writing to her and placing it in her personnel file." (Amended Compl., ¶182). This is already addressed in Defendants' Memorandum of Law. In her Brief, however, Plaintiff does not address Defendants' legal argument that she has failed to state a claim as set forth in Defendants' Memorandum. She does not even address the content of the "verbal reprimand" letter that she described in her Amended Complaint (but did not attach) as her "discipline in writing." The letter is attached as Exhibit "D" to Defendants' Memorandum, pursuant to *City of Pittsburgh*, 147 F.3d at 259 and similar cases cited by Defendants. Instead, Plaintiff argues that she has sufficiently demonstrated causation between her FMLA leave and her receipt of the reprimand due to temporal proximity. (Pl.'s Brf., §D, p.13). She contends that this amounts to a "reasonable inference." *Id.* Plaintiff alleges in her Amended Complaint that she took a two-week FMLA leave beginning in October 2017 due to her former students who had made the YouTube video in February 2016, and Dr. Green allegedly telling Loy's new building principal to "keep an eye" on her. (Amended

Compl., ¶¶117-120, 126). Plaintiff does not address that the verbal reprimand letter from the principal resulted from a student and parent complaint against her for an incident that occurred in class on October 30, 2017, about which Loy was given an opportunity to address. (Defs.' Mem. of Law, Exhibit "D"). Plaintiff argues instead that when an employer violates an employee's FMLA rights, the employee is entitled to lost wages and out-of-pocket expenses. As Defendants' Motion asserts that Plaintiff's Amended Complaint fails to state a claim of FMLA retaliation, Plaintiff's legal arguments about potential damages are irrelevant.

**5. Plaintiff Contends There are No Immaterial, Impertinent or Scandalous Allegations That Should Be Stricken from the Amended Complaint.**

Plaintiff argues that the paragraphs of the Amended Complaint relating to the making of the YouTube video made by a group of her students, away from school grounds, should not be stricken. She asserts a bare legal conclusion that Dr. Green's investigation when she learned of the video, and Defendants' failure to discipline the students,[6] caused an "*actual disruption*" to the school. Plaintiff does not address any of the precedential caselaw cited by Defendants that demonstrate the kinds of facts necessary to demonstrate that off-campus speech by students caused a "*substantial disruption*" to the school. Nor does she assert facts to support *any* disruption. Of course, neither does the Amended Complaint or her Brief

---

[6] Plaintiff's Amended Complaint avers that these students were removed from her class. (Amended Compl. ¶118.) The Amended Complaint avers that Defendants took a host of (appropriate) actions concerning the students' video. (*Id.*, ¶104).

attempt to demonstrate any factual connection between the single incident of Dr. Green's alleged comments about her sexual orientation, and the students' making of their video.

**6.  Plaintiff Contends Her Claims for Relief are Valid and May Not Be Dismissed.**

Plaintiff claims that she "does allege a job loss, including the loss of her basketball coaching job," and these claims may not be dismissed. (Pl.'s Bef., §F, p.15). However, Plaintiff remains employed as a high school teacher with Defendant Mahanoy Area School District. (Amended Compl., ¶9). She has not lost a basketball coaching job. (Amended Compl., ¶123).

WHEREFORE, Defendants Mahanoy Area School District and Dr. Joie Green, request an Order dismissing the Complaint and striking the averments listed in Section IV(5) of Defendants' Memorandum of Law in Support of Motion to Dismiss and to Strike Certain Averments Pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12f).

LEVIN LEGAL GROUP, P.C.

/s/ James J. Musial
Michael I. Levin, Esquire
PA Attorney I.D. No. 21232
James J. Musial, Esquire
PA Attorney I.D. No. 71100
1301 Masons Mill Business Park
1800 Byberry Road
Huntingdon Valley, PA 19006
(215) 938-6378

Date:  January 2, 2018
jmusial@levinlegalgroup.com
*Counsel for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

James J. Musial, one of the attorneys for the Defendants, hereby certifies that the foregoing Defendants' Reply Brief to Plaintiff's Brief in Opposition to Motion to Dismiss and To Strike was filed with the Court and served on the Plaintiff's counsel listed below through the Court's Electronic Filing System on the below date and is available for viewing and downloading:

> Lisa Matukaitis, Esquire
> MATUKAITIS LAW, LLC
> 104 State Street
> Harrisburg, PA 17101

> <u>/s/James J. Musial</u>
> James J. Musial

Date: January 2, 2018